## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

JUSTIN HORN,                          §
                                      §
        *Plaintiff*,                  §
                                      §
v.                                    §        CIVIL ACTION H-09-1514
                                      §
QUANTA SERVICES, INC. *et al.*,       §
                                      §
        *Defendants*.                 §

## MEMORANDUM AND ORDER

Pending before the court is defendants' motion for summary judgment.  Dkt. 12.  Upon review of the motion, the responses, and the applicable law, the motion is GRANTED IN PART and DENIED IN PART.  Specifically, summary judgment is granted on the plaintiff's claim for intentional infliction of emotional distress.  Summary judgment is also granted with respect to the TCHRA and intentional tort claims against defendants Quanta Services, Inc. and Mejia Personnel Services, Inc.  Summary judgment is denied with respect to the remaining claims.

## BACKGROUND

Plaintiff Justin Horn, an African American male, was employed as a laborer by defendant North Houston Pole Line, L.P. ("NHPL") from April 21, 2008 to August 20, 2008.  Dkt. 17, Ex. A. Horn's job required him to work out in the field with a group of approximately twenty other men; Horn was the only African American on the team.  The men were supervised on a day-to-day basis by the foreman, Wade Danley.  Horn alleges that he endured racial harassment from his co-workers and Danley on a daily basis.  For example, one of his co-workers Wes Wooten told Horn to "move his 'black ass.'"  Other co-workers referred to Horn as "boy" and used the word "nigger" in his presence.  Danley purportedly told Horn, among other things, to "shut his 'black ass' up", "to take

his 'black ass' to get [Danley] a beer," and "to get his 'black ass' back to work."  Danley also made remarks to Horn about picking cotton, and referring to other African Americans as Horn's "people." Toward the end of June or beginning of July, 2008, Horn complained to Danley about the racial harassment.  Danley told Horn "that's cool," which Horn took as an indication that Danley was going to stop the harassment.  The harassment, however, continued.  *Id.*

Horn ultimately quit his job with NHPL after an incident that occurred on August 19, 2008. On that rainy day, Danley told Horn to go down into an approximate twelve foot muddy ditch to put a cap on a pipe.  While doing so, Horn became stuck in the ditch.  A co-worker, Lloyd Bowers, went into the ditch to try and free Horn, but Bowers himself became stuck.  Another coworker threw a piece of wood down into the ditch.  Bowers propped his feet on the wood and pushed himself upwards by pressing down on Horn's shoulders—effectively pushing Horn further down into the mud.  Wes Wooten then drove an excavator over to the ditch and lowered the arm of the excavator toward Bowers, allowing Bowers to grab hold and pull himself out of the ditch.  Danley then said something about leaving Horn's "black ass in the ditch."  Horn, at this point, was about waist-deep in the mud and sinking further.  Using the excavator, Wooten then dumped a bucket of mud on top of Horn's head.  Wooten then asked Horn when he would receive the rent money Horn owed him. Horn replied he would pay Wooten that Friday when he received his paycheck.  Horn then yelled for someone to help him get out of the ditch.  Some other co-workers showed up with a rope and told Horn they were going to pull Horn out of the ditch with the rope by his neck.  At that point, someone said "Okay, that's enough" and Wooten helped Horn out of the ditch with the arm of the excavator. Horn contends he was in the ditch for about 30-45 minutes in total; Bowers was in the ditch for about 5-10 minutes.  *Id.*

2

After Horn emerged from the ditch he asked to sit inside of Bowers truck to get out of the rain.  Bowers agreed, but only if Horn disrobed.  Horn did so and Bowers let him into the truck.  Danley apparently then came by and told Horn that "nobody wants your black ass in their truck" and told him to get out of the truck.  Danley then pulled out his cell phone and pretended to take a picture of Horn.  After this incident, Horn never returned to work.  *Id.*

Horn filed this suit against NHLP, Quanta Services, Inc., and Mejia Personnel Services, Inc., alleging false imprisonment, assault, and intentional infliction of emotional distress for the events that occurred on August 19, 2008, and violations of both the Texas Labor Code and § 1981 of the Civil Rights Act for a hostile work environment and constructive discharge.  Dkt. 2-1.  Defendants move for summary judgment on all claims.  Dkt. 12.

**ANALYSIS**

### A.    Summary Judgment Standard

A timely motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  Upon a defendant's motion for summary judgment, the plaintiff "must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him."  FED. R. CIV. P. 56(e).  Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir.

3

2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 322.  If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required.  *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."  *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25.  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant.  *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.  *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).  However, the non-movant cannot avoid summary judgment

4

simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

**B.      Intentional Torts**

The defendants move for summary judgment on Horn's claims of assault and intentional infliction of emotional distress. Dkt. 12. at 28–23. Additionally, defendants contend that even if Horn could prove each of the alleged intentional torts, summary judgment should still be granted on these claims because the defendants cannot be held vicariously liable. *Id.* at 23.

*1.      Intentional Infliction of Emotional Distress*

In his response, Horn concedes that he does not have a valid claim for intentional infliction of emotional distress. Dkt. 17 at 1. Therefore, defendants are granted summary judgment on this claim.

*2.      Assault*

The defendants argue that Horn has not proved that he suffered an actual bodily injury and, therefore, they should be granted summary judgment on his assault claim. Dkt. 12 at 23. Horn rightly points out, however, that under Texas law bodily injury is not required to prove a claim of assault. Dkt. 17 at 35. Rather, "offensive contact is the gravaman of the action; consequently, the defendant is liable not only for contacts which cause physical harm, but also for those that are offensive or provocative." *Foye v. Montes*, 9 S.W.3d 436, 441 (Tex. App.—Houston[14th] 1999, pet. denied) (citations omitted). In the present case, there is a genuine issue of material fact as to

5

whether Wooten's use of the excavator to dump mud on Horn while he was stuck in the ditch was offensive or provocative.  Summary judgment is, therefore, denied on this claim.

      *C.     Defendants' Liability for the Intentional Torts*

      Even if Horn is able to prove the intentional torts were committed by his co-workers, defendants argue that they cannot be held vicariously liable because the employees did not commit the torts within the course and scope of employment.  Dkt. 12. at 23–24.  Ordinarily, an intentional tort committed by an employee is outside of the scope of his employment.  *Garrett v. Great Dist. Co. of Amarillo*, 129 S.W.3d 797, 800 (Tex. App.—Amarillo 2004, pet. denied).  However, an employer can be held vicariously liable for the intentional tort if the act, although not specifically authorized by the employer,  is closely connected to the employee's duties.  *G.T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 884 (Tex. App.—Dallas 2003, no pet.).  The burden rests with the plaintiff to demonstrate that the tort was committed within the course of employment and not as a result of personal animus.  *Garrett*, 129 S.W.3d at 800.  Whether an employee committed a tort within the scope of his employment is a matter for the trier of fact.  *G.T. Mgmt.*, 106 S.W.3d at 880.

      Defendants rely on the fact that the Employment Handbook clearly states that the defendants do not consider intentional misconduct to be within the course and scope of employment.  Dkt. 12 at 24.  Additionally, they argue, the defendants were unaware of the difficulties Horn had been experiencing leading up to the incident on August 19, 2008.  *Id.* at 25.  Lastly, the defendants contend that Horn has failed to show that the torts were not the result of personal animus.  Dkt. 19 at 4.  Horn, however, contends that the torts were committed within the scope of employment because the specific acts arose out of a business related purpose.  Dkt. 17 at 37.  Specifically, Horn was asked by Danley to go into the ditch and place the cap on the pipe.  *Id.*  And, Wooten's act of

6

dumping mud on Horn with the excavator was committed while Wooten was involved in the underlying purpose of his job—helping Horn out of the ditch. *Id.* at 38.

The fact that the Employee Handbook explicitly states that intentional torts are not within the scope of employment is not dispositive. Nor is the fact that the defendant's management team may not have been aware of the incidents that had occurred. The question is whether the torts were closely connected to the employee's job duties. Because Horn bears the burden at trial on this point, he must come forward with sufficient summary judgment evidence to create a genuine issue of material fact. Although there are some possible inconsistencies with Horn's claims—i.e., that he suffered a hostile work environment and was constructively discharged because of his race, yet the intentional torts were committed not because of a personal animus towards African Americans but rather in the course of employment—Horn has at least created a genuine issue of material fact as to the motive behind the intentional torts. Additionally, Horn has offered arguments and evidence that the defendants may be directly liable under a vice-principal theory, which the defendants do not address in their briefing. Therefore, summary judgment is denied on this issue.

## C.     Hostile Work Environment and Constructive Discharge Claims

Defendants argue that Horn cannot demonstrate genuine issues of material fact with respect to his claims for hostile work environment and constructive discharge under 42 U.S.C. § 1981 or under the Texas Commission on Human Rights Act (TCHRA). Dkt. 12 at 7–17. In response, Horn argues that the facts of the case are so egregious as to meet the legal standards for a hostile work environment and constructive discharge, even if only the events of August 19, 2008 are considered. Dkt. 17. In light of the facts in this case, the court agrees that Horn has created at least a genuine issue of material fact with respect to his hostile work environment and constructive discharge claims and, therefore, summary judgment is denied.

**D.      State Law Claims Preempted**

Defendants argue that Horn's state law claims are preempted because the collective bargaining agreement (CBA) between defendants and the union would require interpretation.  Dkt. 12 at  17.  Horn contends that the CBA is not relevant to this case because the CBA requires no interpretation.  Dkt. 17 at 9.  Additionally, the provision in the CBA that deals with discrimination is applicable only to the hiring process and not ongoing employment.  *Id.* at 14.

The section of the CBA relied upon by the defendants states:

**VI.**
**Key Employees/Hiring Procedures**

. . .

(D)      The hiring of employees in addition to Employer's Key Employees, either at the start of the job or later, shall be conducted in the following manner.
            (1) Employer and Union agree that neither of them shall take any action or refuse to take any action which shall discriminate against any individual with respect to his compensation, terms, or conditions, or privileges of employment because of such individual's race, color, religion, sex, nation origin or disability.

Dkt. 17, Ex. B.  A plain language reading of the CBA makes clear this anti-discrimination provision is applicable only to the hiring procedure.  As Horn is not claiming that he was discriminated against during the hiring process, defendants' argument that the CBA preempts the state law claims is unavailing and summary judgment is denied on this point.

**E.      Claims Against Quanta Services and Mejia Personnel Services**

The defendants contend that the TCHRA and intentional tort claims must be dismissed against Quanta Services and Mejia Personnel Services because neither company employed Horn nor any of his co-workers.[1]  Dkt. 12 at 5.  Therefore, the companies are not "employers" for purposes

---

[1]Defendants did not move for summary judgment as to the § 1981 claims against Quanta Services and Mejia Personnel Services.

of the TCHRA and also cannot be held liable for any intentional torts committed by Horn's co-workers. *Id.* Horn did not address this issue in his briefing.

For a company to qualify as an "employer" subject to liability under TCHRA, (1) it must fall within the statutory definition of employer; and (2) there must be an employment relationship between the parties. *Ancira Enters., Inc. v. Fischer*, 178 S.W.3d 82, 88–89 (Tex.App.—Austin 2005, no pet.). The plaintiff bears the burden to demonstrate that the company is his employer. *Id.* at 89. In the present case, Horn admits that NHPL was his sole employer. Dkt. 12 at 6. The evidence also shows that only NHPL ever paid Horn's wages. Additionally, Horn has offered no evidence to suggest that Horn was ever employed by Quanta Services or Mejia Personnel Services. Summary judgment is therefore granted with respect to the TCHRA claims against Quanta Services and Mejia Personnel Services.

Likewise, there is no evidence to suggest there was an employment relationship between Horn's co-workers and Quanta Services or Mejia Personnel Services. Thus, they cannot be held liable for any of the alleged intentional torts. *See G.T. Mgmt., 106 S.W.3d at 884.*

## CONCLUSION

For the reasons stated above, summary judgment is granted on plaintiff's claim for intentional infliction of emotional distress. Summary judgment is also granted with respect to the TCHRA and intentional tort claims against defendants Quanta Services and Mejia Personnel Services. Summary judgment is denied with respect to the remaining claims.

Signed at Houston, Texas on May 27, 2010.

_____
Gray H. Miller
United States District Judge

9